**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DANIEL HOOVEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs | ) Civil Action No. 2:26-542 |
| | ) Chief Magistrate Judge Dodge |
| MIRACLE MOVERS, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Plaintiff Daniel Hooven ("Hooven") brings this action against Defendant Miracle Movers, Inc. ("MMI"). His claim arises out of an incident in which his property and house were damaged during a move that was handled by Miracle Movers of Pittsburgh, LLC ("MMP"), which Hooven contends is a subsidiary or franchise of MMI. He raises claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 to 201-9.3 ("UTPCPL"), federal law, and negligence and negligence per se under state law.

MMI has filed a motion to dismiss (ECF No. 12). It argues that: (1) the case should be dismissed for lack of personal jurisdiction; (2) venue is improper; and (3) the Complaint fails to state a claim upon which relief could be granted. For the reasons that follow, the Court concludes that: (1) personal jurisdiction can be asserted over MMI; (2) venue in this district is proper; and (3) the claims in Count II of the Complaint should be dismissed with prejudice, the claims in Count III should be dismissed without prejudice, and the motion to dismiss the UTPCPL claims in Count I should be denied.

## I. Relevant Procedural History

Plaintiff commenced this action on April 1, 2026. In Count I of the Complaint, he alleges violations of the UTPCPL. Count II is purportedly based on violations of the Federal Unfair Trade

Practices Act and the Motor Carrier Act. Plaintiff alleges claims of negligence and negligence per se under Pennsylvania law in Count III. Subject matter jurisdiction based on diversity of citizenship jurisdiction, 28 U.S.C. § 1332, because the action is between Hooven, a citizen of Pennsylvania, and MMI, a North Carolina company with a principal place of business in Wilmington, North Carolina and the amount in controversy exceeds $75,000.00 based on a provision in the UTPCPL that provides for triple damages based on "knowing, outrageous or reckless conduct," 73 P.S. § 201-9.2(a). (Compl. ¶¶ 5-6, 145-49.)[1]

On June 1, 2026, MMI filed a motion to dismiss (ECF No. 12), which has been fully briefed (ECF Nos. 13, 16). An in-person proceeding was held on October 29, 2026, both for purposes of an evidentiary hearing on the issue of personal jurisdiction and for oral argument on the motion to dismiss for failure to state a claim.

Prior to commencing this action, Hooven filed a Complaint in the Court of Common Pleas of Allegheny County, Arbitration Division, against MMP, raising claims of breach of contract, negligence and violations of the UTPCPL. After MMP failed to respond, Hooven obtained a non-jury verdict in his favor by default and was awarded a judgment of $27,657.70 on April 16, 2025. (Compl. ¶¶ 80-86 & Ex. 2.) Efforts to collect on this judgment have not been successful. (*Id.* ¶¶ 87-90.)

Hooven also filed a formal complaint against MMP with the Pennsylvania Public Utilities Commission (PUC) on July 16, 2025 arising out of the same facts. MMP failed to respond. The PUC fined MMP $2,000.00 on February 6, 2026. (Compl. ¶¶ 123-30 & Ex. 4.)

---

[1] Hooven states that his actual damages are $27,650.70 and that three times that amount is $81,783.03. (Compl. ¶ 149.) (In fact, three times $27,650.70 is $82,952.10.) In addition to monetary relief, the Complaint also requests injunctive relief based on 42 U.S.C. § 3613(c)(1), a provision of the Fair Housing Act. (Compl. ¶ 4; Compl. at 30 ¶ 2.) Hooven has not explained how this Act applies to his case.

## II. Factual Allegations in Complaint

### A. Actions of MMP

According to the Complaint, on or about September 10, 2024, Hooven engaged the services of MMP, the Pittsburgh franchise of MMI, to move his furniture and personal belongings from the house he had sold to a newly constructed house. (Compl. ¶¶ 16, 30.) He states that MMI falsely advertised that it would provide professional packing and unpacking services, transport his property to a private storage facility that was climate controlled, handle his items professionally, and would not use day laborers. It also advertised that it was fully licensed and insured. (*Id.* ¶¶ 17-19, 92 & Exs. 1, 3.) Hooven relied on this advertising when hiring MMI. (*Id.* ¶¶ 20, 131.)

Despite what was promised, the movers used private vehicles and open truck beds to remove his belongings on November 5, 2024 and raised the price of the move without explanation. Further, when they came to move his belongings from storage into his new home on November 14, multiple day laborers were used. They failed to implement protective measures such as floor runners, proper floor, wall and stairway protection, and instead used cardboard. They delivered items that were unwrapped, improperly protected, water-stained or moisture damaged. Numerous items showed water exposure, and the movers dragged, dropped and mishandled his furniture, slamming items against walls and counters.

As a result, all four levels of the newly constructed home sustained substantial damage, as did every major furniture item. All bedding was destroyed and three mattresses had to be discarded due to moisture contamination. Hooven complained to Andrew Zeffiro, an MMP manager, who promised to "look into" these issues but failed to do so. (*Id.* ¶¶ 25-43.)

Zeffiro became angry when Hooven refused to pay until the issues were addressed by submitting the claims to insurance. (*Id.* ¶¶ 49-66.) Hooven attempted to resolve the matter, but

Zeffiro and MMI employee Matt Miller did not identify the insurance carrier and insisted on full payment before remediating the issues. (*Id.* ¶¶ 72-76.) Hooven hired legal counsel, who filed the arbitration complaint discussed above. He also attempted to submit the claim to Vanliner Insurance Company after determining that it was the carrier, but Vanliner denied the claim because MMI never notified it about the claim. (*Id.* ¶¶ 97-101.)

MMI claims that, as of October 21, 2025, its Pittsburgh franchise is no longer in operation. Hooven asserts that MMI's efforts to "shut down" MMP are in violation of 66 Pa. C.S. § 1102(a)(2) and 52 Pa. Code § 3.381(a)(i)(v) because it did not seek the PUC's approval. (*Id.* ¶¶ 138-40.) See ECF No. 15 Ex. E at 16-17.[2]

B. Involvement of MMI

According to the Complaint, MMI directed and controlled the actions of its employees and agents at MMP, its Pittsburgh franchise. (Compl. ¶ 9.) After Hooven was unable to meaningfully communicate with Zeffiro, he contacted MMI's corporate offices in North Carolina and spoke with Managing Partner Jason Jordan to alert him to problems that he was having with MMP. (*Id.* ¶ 47.) After more problems arose, Zeffiro and Jordan participated in a conference call with Hooven to "address the damages, threats from the prior day, and the claims process." (*Id.* ¶ 67.) In December 2024, Hooven again contacted Jordan, who indicated he would follow up but never did so. (*Id.* ¶ 77.) In January 2025, Hooven sent a formal demand letter to Zeffiro, Jordan and MMP personnel. (*Id.* ¶ 79.)

In February 2026, Jordan, MMI Principal Samantha Wilhoit and others were made aware of the judgment Hooven had obtained against MMP in Allegheny County but refused to make any

[2] In addition to these allegations, Hooven also refers to damages suffered by other MMI customers and other outstanding judgments against "Miracle Movers" in federal and state courts in this district (*id.* ¶¶ 134-37).

payment. (*Id.* ¶ 90.) Hooven states that his counsel had a conversation with MMI employee Matt Oates in August or September 2025 during which Oates acknowledged that MMI "would take responsibility for the payment and made a paltry settlement offer to satisfy [Hooven's] default judgment." (*Id.* ¶ 103.)

**III. Other Evidence Submitted by the Parties**

In support of its motion to dismiss, MMI submitted the declaration of Samantha Wilhoit, the Principal of MMI. She states that MMI is not registered to do business in Pennsylvania, has never maintained an office, employees or bank accounts in Pennsylvania, has never owned or leased property in Pennsylvania, has never maintained a registered agent for service of process in Pennsylvania and has no ownership interest in MMP. (Wilhoit Decl. ¶¶ 4-9, 16.)[3] She also declares that MMP "is not a subsidiary of, branch of, franchisee of, or satellite location of [MMI]." (*Id.* ¶ 17.)

MMI did not submit any other evidence in support of its contention that the Court lacks personal jurisdiction over it. During the hearing, MMI represented that MMI and MMP are separate entities, but provided no other information about their relationship.

Hooven's opposition to the motion to dismiss included evidence challenging MMI's jurisdictional argument. He provided two verified applications, one for MMI and a second for MMP, that Ms. Wilhoit submitted to the PUC in 2019 to operate in the Commonwealth of Pennsylvania. As reflected in these applications, both entities used the same mailing and physical addresses, the same US DOT Number and the same Pennsylvania Corporation Bureau Entity ID Number. (ECF No. 16 Exs. A, B.)[4] Identical Statements of Financial Interests are attached to each

---

[3] ECF No. 13 Ex. 3.

[4] The Court takes judicial notice that the Pennsylvania Department of State public website reflects that MMP is registered as a domestic LLC with the Department of State with the identification

application.

Hooven also supplied screenshots using the internet database called the "Wayback Machine." These screenshots show that, at the time he engaged MMP to move his property, MMP was identified as MMI's Pittsburgh franchise on MMI's website. (*Id.* Exs. C, D.)[5]

Among other evidence submitted by Hooven was a filing that MMP's manager Andrew Zeffiro submitted to the PUC in which he provided the timeline of MMI's creation of MMP, its Pittsburgh franchise. Ms. Wilhoit is named as the individual responsible for opening MMP. (*Id.* Ex. E.)

Hooven testified at the evidentiary hearing. He stated that he found MMP by searching the internet for a company that met his criteria and had a Pittsburgh location. During this search, he found MMI, which identified MMP as its Pittsburgh franchise. He also reviewed its advertising. Moreover, during the move, he communicated repeatedly with Matt Miller, who worked with MMI's corporate office in North Carolina. He identified a proposal sent to him by Miller on the letterhead of MMI that would have compensated him for the damages, but only after he paid the full amount for services rendered of $5,400. (Hr'g Ex. 1.) Hooven refused to sign this agreement.

MMI presented no witnesses or other evidence at the hearing.

---

number provided on both applications, 6911424. MMI is not registered with the Pennsylvania Department of State. *See* https://file.dos.pa.gov/search/business.

[5] At the evidentiary hearing, MMI's counsel cross-examined Hooven about his use of the Wayback Machine, suggesting that its information can be manipulated. On redirect, Hooven testified that the Wayback Machine is merely an internet database and that users can only request information, not change what appears on the screen. "The Wayback Machine only provides a window into the past where users can see what a website looked like on a specific date." *Healthcare Advocates, Inc. v. Harding, Earley, Follmer, & Frailey*, 497 F. Supp. 2d 627, 631 (E.D. Pa. 2007). MMI provided no witnesses or evidence to suggest otherwise.

## IV. Analysis

### A. Personal Jurisdiction

Under Rule 12(b)(2), a defendant may move to dismiss a complaint if the plaintiff fails to establish that the court has personal jurisdiction over it. "Once it is challenged, the burden rests upon the plaintiff to establish personal jurisdiction. A nexus between the defendant, the forum and the litigation is the essential foundation of in personam jurisdiction." *General Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) (citation omitted).

The court initially must "accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff," who only needs to establish a "prima facie case." *Carteret Savs. Bank, FA v. Shushan*, 954 F.2d 141, 142 & n.1 (3d Cir. 1992). The court can reconsider the issue "if it appears that the facts alleged to support jurisdiction are in dispute," and can conduct an evidentiary hearing to resolve any disputed facts. *Id.* "Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence" and may not "rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984).

As noted by the Supreme Court, two types of personal jurisdiction have been recognized:

> "general" (sometimes called "all-purpose") jurisdiction and "specific" (sometimes called "case-linked") jurisdiction. *Goodyear* [*Dunlop Tires Operations, S.A. v. Brown*], 564 U.S. [915], 919, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011) "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." Id. at 924, 131 S. Ct. 2846. A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State. Id. at 919, 131 S. Ct. 2846. But "only a limited set of affiliations with a forum will render a defendant amenable to" general jurisdiction in that State. *Daimler* [*AG v. Bauman*], 571 U.S. [117], 137, 134 S. Ct. [746], 760, [187 L. Ed. 2d 624 (2014)]

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017). Other than in an "exceptional case," the only forums that will be appropriate are a corporation's state of incorporation and its principal place of business. *Daimler*, 571 U.S. at 139 n.19.

On the other hand, in order for the court to exercise specific jurisdiction, the lawsuit must arise out of or relate to the defendant's contacts with the forum. *Bristol-Myers Squibb*, 582 U.S. at 262. As the Supreme Court has stated:

> In other words, there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S., at 919, 131 S. Ct. 2846 (internal quotation marks and brackets omitted). For this reason, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Ibid.* (internal quotation marks omitted).

*Id.*

Whether specific jurisdiction exists includes an analysis of three factors. First, it must be determined if the defendant "purposefully directed [its] activities" at the forum. In addition, the litigation must arise out or relate to one of these activities, and third, a court may consider whether its exercise of jurisdiction would "comport with 'fair play and substantial justice.'" *O'Connor v. Sandy Lane Hotel Co.,* 496 F. 3d 312, 317 (3d Cir. 2007) (quoting *Burger King,* 471 U.S. at 472, 476).

The Federal Rules of Civil Procedure authorize a district court to assert personal jurisdiction over a non-resident to the extent permissible under the law of the state where the district court sits. Fed. R. Civ. P. 4(k)(1)(A). *O'Connor*, 496 F.3d at 316. Pursuant to Pennsylvania's long arm statute, 42 Pa. C.S. § 5322(a), a plaintiff can establish specific personal jurisdiction by showing that a defendant has engaged in forum related activities.

Pennsylvania also authorizes exercise of the jurisdiction of its courts over non-residents "where the contact is sufficient under the Constitution of the United States," 42 Pa. C.S. § 5308, and "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. C.S. § 5322(b). *See Kubik v. Letteri*, 614 A.2d 1110, 1114 (Pa. 1992) (following *Burger King* analysis).

Foreign corporations must register to do business in Pennsylvania, 15 Pa. C.S. § 411(a), and such registration represents an agreement to appear in court on "any cause of action" against them, 42 Pa. C.S. § 5301(a)(2)(i), (b). The Supreme Court has upheld these provisions as establishing consent to personal jurisdiction. *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122 (2023).

Hooven does not discuss the concept of general jurisdiction or argue that general jurisdiction exists over MMI based on the conduct of MMP. Such an argument would be unavailing in any event. *See Daimler AG v. Bauman*, 571 U.S. 117, 136 (2014) ("Even if we were to assume that [a subsidiary] is at home in California, and further to assume that [the subsidiary's] contacts are imputable to [the nonresident parent], there would still be no basis to subject [the parent] to general jurisdiction in California, for [the parent's] slim contacts with the state hardly render it at home there.")

Rather, he contends that MMI can be subjected to personal jurisdiction in Pennsylvania based on its contacts with respect to this case and based on consent because it is registered to do business here. As noted above, MMI did not proffer testimony by Ms. Wilhoit at the evidentiary hearing held to resolve this issue. It relies entirely on her declaration, but her declaration has questionable weight based on the evidence submitted by Hooven.

While the PUC applications that Hooven has cited may suggest that MMI was registered to do business in Pennsylvania, which would subject it to personal jurisdiction based on consent, MMI does not appear to be registered to do business in Pennsylvania based on available public records. However, the Court need not resolve this issue because the evidence supports the exercise of specific personal jurisdiction based on contacts that MMI personnel made with Hooven in connection with the underlying events in this case. Significantly, Hooven states that MMI Managing Partner Jason Jordan spoke to him about the problems that occurred during the move (Compl. ¶ 47), joined a conference call with Hooven and Zeffiro (*id.* ¶ 67), promised Hooven he would "follow up" (*id.* ¶ 77) and received a demand letter when the issues were not resolved (*id.* ¶ 79.) MMI employee Matt Oates also acknowledged Hooven's default judgment against MMP and made a "paltry settlement offer" to resolve it (*id.* ¶ 103). MMI has not challenged these statements or presented any evidence to refute that its corporate officers were involved with the events underlying this situation.

Therefore, because specific personal jurisdiction can be asserted over MMI, its motion to dismiss based on Rule 12(b)(2) will be denied.

B. <u>Venue</u>

MMI also moves to dismiss the case for improper venue based on Rule 12(b)(3). A court may evaluate facts outside the complaint to determine proper venue; however, all reasonable inferences must be drawn in the plaintiff's favor. The party moving for dismissal based upon improper venue bears the burden of proof. *See e.g., Myers v. American Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982).

A civil action may be brought in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). MMI argues that a

substantial part of the events or omissions giving rise to Hooven's claims did not occur in this district. (ECF No. 13 at 11-12.) Based on the facts pleaded in the Complaint, however, a substantial part of the events did occur in this district. Taken as true, Hooven alleges that MMI was directing and controlling the actions of its employees and agents of its Pittsburgh franchise, Miracle Movers of Pittsburgh, LLC; that it offered the services of its Pittsburgh franchise; engaged in false advertising about the services of MMP; and actively engaged in communications and attempts to resolve the issues allegedly caused by MMP with Hooven.[6]

Therefore, as venue is proper in this district, the motion to dismiss based on improper venue will be denied.

C. Failure to State a Claim

MMI also seeks the dismissal of Counts II and III of the Complaint, contending that they fail to state a claim upon which relief could be granted.[7]

Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "This requires a plaintiff to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations ... a formulaic recitation of the elements of a

---

[6] The Complaint refers to both MMI and MMP as "Miracle Movers." As reflected in the exhibits to the Complaint and the evidence at the hearing, however, it is clear that MMP conducted the move and stored Hooven's property.

[7] MMI has not moved to dismiss the UTPCPL claims in Count I.

cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570).

As noted by the Court of Appeals for the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), a 12(b)(6) inquiry includes identifying the elements of a claim, disregarding any allegations that are no more than conclusions and then reviewing the well-pleaded allegations of the complaint to evaluate whether the elements of the claim are sufficiently alleged.

In ruling on a Rule 12(b)(6) motion, courts generally consider only the complaint, exhibits attached thereto, and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). In addition, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

1. Count II—Federal Statutory Claims

In Count II, Hooven alleges claims based on two federal statutes. He contends that MMI is subject to the regulations and guidelines of the Federal Motor Carrier Safety Administration (FMCSA). He also cites the Federal Trade Commission Act, 15 U.S.C. §§ 45, 52.

MMI correctly argues that neither of these statutes provides for a private cause of action. "Neither the Federal Motor Carrier Safety Regulations nor the Federal Motor Carrier Safety Act creates a private cause of action." *Ware v. Transp. Drivers, Inc.*, 30 F. Supp. 3d 273, 276 (D. Del. 2014). *See also Zimmerman v. Highmark, Inc.*, 780 F. Supp. 3d 588, 603 (W.D. Pa. 2025) (the FTC Act does not contain a private right of action). *See Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) ("[I]t is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress.") Hooven has not directly responded to

this argument.[8]

Therefore, with respect to Count II, the motion to dismiss will be granted. Because the defects in this claim cannot be cured by amendment, the dismissal will be with prejudice and without leave to amend.

2. Count III—Negligence and Negligence Per Se

In Count III, Hooven alleges claims of negligence and negligence per se. MMI moves to dismiss these claims based on the gist of the action doctrine. Hooven opposes this argument on the ground that he had no contract with MMI.

In *Bruno v. Erie Ins. Co.*, 106 A.3d 48 (Pa. 2014), Defendant Erie asserted that Plaintiffs' negligence claim was barred by the gist of the action doctrine. As noted by the Pennsylvania Supreme Court:

> The general governing principle which can be derived from our prior cases is that our Court has consistently regarded the nature of the duty alleged to have been breached, as established by the underlying averments supporting the claim in a plaintiff's complaint, to be the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract. In this regard, the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort, e.g., for negligence, is not controlling. If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

106 A.3d at 68 (footnotes and citations omitted).

---

[8] In discussing his negligence per se claim in Count III, Hooven argues that MMI's duty arises out of these federal statutes and regulations. However, as indicated below, this argument does not allow Hooven to bring claims by utilizing statutes that do not permit a private cause of action.

Here, the Complaint alleges that Hooven engaged the services of "Miracle Movers" through its Pittsburgh franchise, MMP. Hooven does not allege that he had a contractual relationship with MMI. Thus, its duties to him, if any, could not have arisen out of the contractual relationship he had with MMP. *See Mirabella v. William Penn Charter Sch.*, 2016 WL 7042208, at *4 (E.D. Pa. Feb. 24, 2016) ("there is no legal basis for barring a party's tort claim under the gist of the action doctrine simply because another party has asserted a breach of contract claim in the same case."); *Tank Bros, LLC v. Acuantia, Inc.*, 2026 WL 2059078, at *13 (M.D. Pa. July 16, 2026) (granting motion to dismiss negligence claim under gist of the action as to contracting party, but denying it with respect to defendant that was not a party to the agreement).

Thus, the gist of the action doctrine is inapplicable to these claims.

MMI also argues that Count III seeks to impose liability on it for actions taken by another party, namely MMP. *See* Compl. ¶ 167 ("Miracle Movers agreed to safely store and move [Hooven's] possessions from his old residence to his newly constructed home."); *id.* ¶ 168 ("Miracle Movers assumed a duty to perform the storage and move consistent with industry standards and the 'utmost care and respect.'") *See also* Compl. Ex. 6. Hooven responds that an employer may be held liable for the actions of its employees if it knew or should have known through the exercise of ordinary care that individuals are exposed to a risk of harm through its employees. *See Hutchison ex rel. Hutchison v. Luddy*, 742 A.2d 1052, 1062 (Pa. 1999) (church could be held liable for failing to control priest who molested minor on church property). Here, however, Hooven alleges that MMI can be held liable for negligence based on the actions of its franchise or subsidiary, not its employees. To the extent that he suggests that MMI should be held liable for the negligent conduct of MMP, the Complaint does not sufficiently allege facts that

support this position.[9]

Hooven also contends that MMI can be held liable under a theory of negligence per se because it did not ensure that MMP's actions conformed to certain federal and state statutory and regulatory guidelines. However, "Pennsylvania does not recognize a claim for negligence per se based on statutes without a private right of action" and that "negligence per se is not a separate cause of action under Pennsylvania law." *Zimmerman*, 780 F. Supp. 3d at 603 (citation omitted). Thus, Hooven's negligence per se claim will be dismissed with prejudice. Because the Court cannot conclude that amendment would be futile, however, MMI's motion to dismiss the negligence claim will be granted without prejudice.

## V. Conclusion

For the reasons explained above, the motion to dismiss based on lack of personal jurisdiction and improper venue will be denied. With respect to MMI's 12(b)(6) arguments, Count II will be dismissed with prejudice. As to Count III, the negligence per se claim will be dismissed with prejudice and the negligence claim will be dismissed without prejudice.

Dated: November 18, 2026 BY THE COURT:

/s/Patricia L. Dodge
PATRICIA L. DODGE
CHIEF UNITED STATES MAGISTRATE JUDGE

[9] During oral argument, Hooven's counsel described the negligence claim in Count III as if it asserted liability against MMI based on its advertising that, in performing the move, its franchise would meet certain standards. That is not the claim alleged in the Complaint.